In re the MARRIAGE OF John
A. FERNSTRUM, Appellee,

and

Patricia J. Fernstrum, Appellant.

No. 90CA1135.

Colorado Court of Appeals,
Div. I.

Aug. 1, 1991.

Rehearing Denied Oct. 3, 1991.

Dorothy H. Tomasetti, Littleton, for appellee.

Lee J. Belstock, Denver, for appellant.

Opinion by Judge DUBOFSKY.

Wife, Patricia J. Fernstrum, appeals the portion of the permanent orders denying her maintenance and requiring husband, John A. Fernstrum, to pay only a portion of her attorney fees and costs. We affirm in part, reverse in part, and remand with directions.

The parties were married for more than 25 years. In 1980, the parties filed for bankruptcy. Husband filed separately again in 1989. What little property was available for division was awarded to wife. Husband had a six-month employment contract and grossed $5000 per month. Wife's bank statements showed a cash flow averaging $1400 per month for the preceding year.

The court denied wife's request for maintenance. The court further determined that, even had wife been eligible for maintenance, husband would have been unable to pay. However, because of the current disparity in husband's and wife's incomes, husband was ordered to pay 50% of wife's attorney fees incurred after January 1, 1990. Husband was also given responsibility for repayment of more than $500,000 in debt, approximately half of which is owed to the IRS. Interest payments alone for the IRS debt exceed $2100 per month.

## I.

Wife contends that the trial court erred in determining that she was not eligible for maintenance. We agree.

A court may award maintenance only when it finds that a party lacks sufficient property to provide for his or her reasonable needs and is unable to be self-supporting through appropriate employment. Section 14–10–114(1)(b), C.R.S. (1987 Repl.Vol. 6B). "Appropriate employment" means employment that is suited to the individual and that reflects the expectations and intentions established during the marriage. *See In re Marriage of Olar,* 747 P.2d 676 (Colo.1987).

The "reasonable needs" and "unable to support" criteria have been interpreted such that the trial court is required to evaluate the spouse's eligibility for maintenance, not just on those factors, but also by reviewing the equities of the entire situation between the parties. *In re Marriage of Olar, supra.*

Although § 14–10–114(2), C.R.S. (1987 Repl.Vol. 6B) provides the critical criteria to apply in determining the *amount* of a maintenance award, some of the factors listed in this section, *i.e.,* the standard of living during the marriage, the duration of marriage, and the extent of the other spouse's earnings, can also be relevant equitable factors in determining the spouse's eligibility for maintenance. *See In re Marriage of Olar, supra.* Also, in *In re Marriage of Olar,* the court indicates that, even though the spouse requesting maintenance might not have been otherwise eligible for it, since her employment enabled her husband to obtain an advanced degree, the equities of that situation required that she be found eligible for and granted maintenance.

Here, wife, who is 48, did not work outside the home between 1966 and the time of the dissolution. She has only rudimentary employment skills. Her current employment offers no medical or pension benefits. She testified that her employment provides only enough funds to meet her most basic needs.

In contrast, her standard of living during the marriage was quite high. Although husband had prior financial setbacks, he had managed to overcome them and was generally able to provide a high standard of living for himself and wife.

In support of the trial court's ruling on the maintenance issue, husband contends that he has no current funds from which he could pay maintenance. However, this fact is not dispositive.

While we agree that the trial court should not attempt to enforce a standard of living that is beyond the means of the husband, neither should the court assume that a substantially reduced economic level that just meets the wife's basic needs is the appropriate and final alternative for her. *See Sinn v. Sinn,* 696 P.2d 333 (Colo.1985).

After reviewing the record and considering the relevant factors under § 14–10–114(1), (2), C.R.S. (1987 Repl.Vol. 6B), *i.e.,* the parties' present needs and resources, the standard of living during the marriage, the duration of the marriage, the situation of the wife, and the ability of the husband to meet his needs while meeting those of the wife, we conclude that there is no support in the record for the trial court's finding that wife was ineligible for maintenance. *See In re Marriage of Marshall,* 781 P.2d 177 (Colo.App.1989). To the contrary, we conclude that, as a matter of law, wife was eligible for maintenance.

Here, the trial court did not consider the standard of living during the marriage or the possibility of husband's financial situation improving in finding wife ineligible for maintenance. Instead, the trial court looked only at the spouse's present economic circumstances. We conclude that, under § 14–10–114(1)(a), C.R.S. (1987 Repl.Vol. 6B), the standard of living established during the marriage and the reasonable likelihood that the husband's economic situation might improve are equitable factors in determining if the wife, who might not otherwise be eligible for maintenance, is entitled thereto. Furthermore, we conclude the trial court erred in apparently giving the husband's present economic situation determi-

native weight in finding wife ineligible for maintenance.

■ Here, the standard of living during most of the 25-year marriage was quite high. At the time of the dissolution, however, husband was not in a financial position to make maintenance payments to wife that would allow her to maintain their prior standard of living. But, within a relatively short period after a marriage ends, the parties' economic circumstance can change significantly. Therefore, it is improper to use only the parties' present economic circumstances to preclude a maintenance award if, as here, the parties' standard of living was significantly higher during the marriage and there is reason to believe husband's income may improve again.

Poor financial circumstances are frequently major factors in marital breakdowns. The fact, however, that the parties are in debt at the time of the dissolution and are having serious financial problems does not preclude a nominal award of maintenance, if, as here, there is reason to believe that one party may rebound financially and may again be in a position to assist the other spouse in obtaining a standard of living nearer to that enjoyed during their marriage. *See* § 14–10–122, C.R.S. (1987 Repl.Vol. 6B).

In *In re Marriage of Ward*, 740 P.2d 18 (Colo.1987), the court determined that maintenance could be temporarily reduced to accommodate the husband's present economic difficulties. Based on the assumption that the husband's economic situation would improve, the court also ordered a future increase in monthly maintenance payments. The court in *Ward* indicated that, in determining an appropriate maintenance award, the trial court should look at husband's past and present economic situation as well as his likely future earnings.

■ Consonant with the philosophy expressed in *Ward*, we conclude that a review of the parties' past, present, and future economic situations is the best process for the trial court to follow in determining if the spouse, who does not otherwise meet the maintenance eligibility requirements of § 14–10–114(1), is nonetheless still equitably entitled to maintenance because of the parties' standard of living during the marriage. *See also Watson v. Watson*, 135 Colo. 296, 310 P.2d 554 (1957); *In re Marriage of DaFoe*, 677 P.2d 426 (Colo.App. 1983). *But see Boyer v. Boyer*, 148 Colo. 535, 366 P.2d 661 (1961). A similar review of the spouse's economic situation is also the best method for implementing § 14–10–114(2)(c) and § 14–10–114(2)(f), C.R.S. (1987 Repl.Vol. 6B) to determine the amount of maintenance to be paid.

Accordingly, we reverse the determination of the trial court that wife is ineligible for maintenance and direct that husband be ordered to pay $1.00 per year toward such maintenance until such time as there is a positive change in his economic financial situation so as to permit an increase in payment. *See In re Marriage of Woodman*, 676 P.2d 1232 (Colo.App.1983). *See also In re Marriage of Reeser*, 635 P.2d 930 (Colo.App.1981); *In re Marriage of Davis*, 35 Colo.App. 447, 534 P.2d 809 (1975). The $1.00 per year award reflects husband's present poor economic situation, but it has the effect of permitting an adjustment upward if future circumstances require. *See In re Marriage of Woodman, supra; see also In re Marriage of DaFoe, supra.*

## II.

Wife next contends that the trial court erred in awarding her only a portion of her attorney fees and costs. We disagree.

■ The allowance of attorney fees is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *In re Marriage of Franks*, 189 Colo. 499, 542 P.2d 845 (1975). We find no abuse of discretion here.

Wife's remaining contention is without merit.

The judgment is affirmed in all respects, except as to the denial of maintenance. That portion of the judgment is reversed, and the cause is remanded to the trial court

with instructions to modify it in accordance with this opinion.

PIERCE and RULAND, JJ., concur.